Good morning. Good morning. We followed on behalf of Brian Sawyers, the appellant. I would like to save two minutes for rebuttal, if I can. The only issue I want to argue this morning is the refusal of the district court to give the implicit bias, unconscious bias instruction. Now, I realize that there has been no court that has reversed on that basis, and the government is the one that found one case in Iowa, a state appellate decision in which the court urged trial courts to give this instruction but found it was harmless error in that particular case. But maybe, just maybe, this is an instruction whose time has come. After this trial, the Western District of Washington developed a video, which is on the court's website, in which they show to all prospective jurors, unless there's some objection for a particular case that would be too inflammatory or something. But that video is the chief judge, the U.S. attorney, and the head of the ACLU. Yes, and CLE and all of this is moving in that direction. But that doesn't mean that it's still not discretionary as to whether or not it be given, isn't it? Well, I think ordinarily, yes, it would be a discretion, and we could say that it was an abuse of discretion in this particular case. And why is that? First of all, we do have a defendant, a black defendant, who's accused of selling crack cocaine from a hamburger stand in South Central Los Angeles. So we have, you know, hidden implicit biases, all of that. The government also benefits from an instruction like this because many of the government's witnesses are minorities, hard to believe. And so I don't see how the government loses in a case like this. But in particular, we have the fact that the evidence in this particular case was basically dependent largely on the informant. The videos don't show anything. The government agents admitted that they didn't do the most thorough pat-down before he went in to do the buy. And the jury asked to rehear the tapes and the videos over and over and over again. So it would seem, and this is the kind of thing, too, when we talk about abuse of discretion, this is a very difficult type of instruction to show error. It's almost structural error. Would you remind me, please, what precisely the district judge did instruct the jury with respect to not being influenced by a person's race, color, religion, national ancestry? What exactly did the district judge say? The district judge did instruct that the jurors should not be influenced by their biases, prejudices. Likes, dislikes, sympathy, prejudice, fear, public opinion. Don't let any of that influence you. And he gave that instruction at the beginning of the trial and also at the end, right? Absolutely. Why doesn't that cover it? It doesn't cover it because what we are talking about here are the unconscious biases that all of us may not even have confronted. And that is what is all of the new, you know, all of the... So is this your argument that although the district judge, both in the beginning of the trial and at the end, said, jury, don't be influenced by any types of prejudices, biases, sympathies, like that. What the judge should have done and was error not to have done is, and by the way, jury, let me also tell you, you may not know, but some people have, many of us have implicit biases. Here's what an implicit bias is. Don't let that affect you either. I believe that the judge... That is my position. And it was required in this case. Again, we have a... You'd like it to be required in every case. Well, you know, I think that is a good argument. It should be given. If a defense requests an instruction like that, because it could apply in all kinds of cases, I think that if it is true and there hasn't really been any, you know, it's not true that we have hidden or unconscious biases. And I think we go to the California state civil jury instructions now say, you may have biases that you are not aware of. And so I think it's that we have explicit biases and we have implicit biases. It's like somebody might be sitting on a jury and think, oh, my God, I didn't realize I hate lawyers that much. You know, I mean, it's... Oh, they think that all the time. Right, let's kill them all. That's pretty overt. Yeah, right. You know, but it is, again, when you are asked to look deep into yourself and confront, oh, my God, I hadn't thought about that. Let me ask you... Sexual assault cases? I'm sorry? Sexual assault cases? Absolutely. Absolutely. Let me ask you this question, if I may. Yes. If the Ninth Circuit Jury Instructions Committee were to put out a model implicit bias instruction of the sort that you're saying with a comment that this is discretionary for the court, for the district judge, but if you want to give one, here's a model for your consideration. If that were to be a Ninth Circuit model instruction, and if we had a criminal case involving a racial minority as a defendant and the judge didn't give it, would you be pointing to the existence of that model instruction as evidence for why there was reversible error? Absolutely. I think there should be. Doesn't that push us towards the problem of that we're not likely to get such a model instruction that's up to the judge's discretion that we can then see how things develop? You want to get us there right now, right? I do. Okay. But I will say that there are many model Ninth Circuit instructions, and just because there is a model Ninth Circuit instruction doesn't mean that in every single case it should be given because it has to apply to the particular facts of the case. That's why I said there's a similar racial minority as a defendant. Your theory here is that the jury is partial unless it is you have a due process theory. The legal underpinning of your argument is that without this instruction you have a biased jury? Well, that's obviously going to be very, very difficult to prove because we can't. Unless in some cases there's affirmative indications of juror problems or juror bias, you don't have that in this case. No, that's a totally separate issue, obviously. But what we do have is, and I think it goes back to the circumstances of this case, who the defendant was, what he was charged with. In fact, what is it? The overwhelming majority of people charged with selling crack cocaine are black defendants. This took place in the South Central. Let me ask you this. Isn't this something that can be argued in closing argument? You know, it could be, but without an instruction that tells you, you know, hey, we all have unconscious biases, there's nothing right or wrong about that, but we need to confront them so that in closing argument it may well come sort of out of left field. Well, what if there was an expert witness? Would a defendant be allowed to present an expert witness in a case like this who could tell the jury all about implicit biases? And if so, that wasn't offered here, right? No, there was not an offer for that. And, you know, the expert witness, and see that's the thing is an expert witness would be much more powerful and much more objectionable by the government than a benign jury instruction like this. What would be the objection? Well, I mean, I think it happens a lot. I mean, the objection is that it's, you know, over the top, it's overly prejudicial. You know, there may even be an objection that it's the expert, you know, relying on faulty data. I mean, there's all kinds of objections that you can have to that. I know you wanted to save a little bit of time. Okay. Thank you very much. You've got double duty today. Walk you in. Thank you, Your Honors. Good morning again. May it please the Court. My name is Enola Antony, and I represent the United States in this matter. The question before the Court is whether an instruction on implicit bias is constitutionally required based on nothing more than the fact that the defendant was African-American and whether it was abuse of discretion for the district court not to have done it. I will address that, Your Honors. But I do want to first turn to what I believe is not at issue in this appeal, whether implicit biases exist and whether or how to deal with them. One would have to be almost blind not to recognize that implicit biases exist and that they can have effects on people, including potentially members of a jury. We all have biases of one kind or another, some significant, some less significant. So would you advise the Ninth Circuit Jury Instructions Committee to include a model instruction of the sort that the Western District of Washington uses? I wouldn't be so presumptuous as to say that I am qualified to advise. Well, I'm asking for your advice on that. I'm the chair of that committee. I believe that this is a very complex issue, Your Honor, and it is one that certainly is worthy of further consideration. It's an issue that should draw upon a number of perspectives. There are a lot of stakeholders. There are also people who have expertise on this, unlike me. Even without a jury instruction, I know a lot of trial judges do, during your process, discuss the issue of biases and prejudices and emphasize that, look, sometimes it can be subconscious bias. You need to be aware of that. You need to set that outside the courthouse doors. And, you know, different judges say it differently. Did this particular judge do that during the jury selection process? I don't believe he went to quite that extent. But as the court noted, during the voir dire, actually maybe before the open and at the close of evidence, the court did discuss what the jury should and should not consider. And then during voir dire, specifically ask the questions that the defendant requested, which were questions designed to suss out whether there were any racial biases, whether the jury had any feelings about what a drug dealer looked like. And I understand that the argument is that these are implicit biases that we may not be aware of. But that also presumes that merely saying, oh, you have implicit biases, means that poof, the problem is solved. I think it's a much more complex issue than that. Because we may not be aware of our implicit biases, do you think it would be appropriate for a criminal defendant in an appropriate case to call an expert witness to tell the jury about implicit biases? You know, Your Honor, that's a hypothetical I have not given a lot of thought to. I could see some objections to it. I could also understand why a defendant might want to do it. I don't believe it. I don't believe. I'll leave it at that, Your Honor. Can I ask you about the sentence? Yes, Your Honor. The defendant is 57 years old, and the sentence was 15 years. What was the discussion at sentencing about that? Sure, Your Honor. I think that there was a substantial amount of discussion about that at sentencing, both by the parties and by the judge, who indicated that he felt like the defendant had good qualities but also was a serial drug dealer, a recidivist, and that he had not learned his lesson or shown that there was any inclination to follow the law, that essentially he was a hardened career criminal. And he was a career criminal. He was sentenced under the career offender guidelines. What was the option that was before him? The government recommended a below-guidelines sentence. He was looking at 360 to life? He was looking at 360 to life. And what did the government recommend? The government, I believe, recommended 17 years. So my math is not great. I don't know what 12 times 17 is. But he ended up getting two years less than that. The defense was recommending the mandatory minimum itself, which was 10 years. Okay. And so just to close out that point, I believe that the court did do weighing of all the factors required, and determined that, particularly based on the risk of recidivism, that the defendant was good for those 15 years. He was selling cocaine up until the time of his arrest in 2015, which was even three years after his sales to the confidential informant. So there were a lot of factors that weighed in favor of a lengthy sentence. I don't want to suggest that he's lucky to have only gotten 15 years, but it was half of the guidelines range. Your Honor, just to go back very briefly to the abuse of discretion argument, I don't want to take up more time than necessary. I do think it is important to recognize three points. Obviously, the court is aware of what the defendant submitted to the district court. What it didn't indicate, however, what the defendant's submission didn't indicate, was that the jurors had any implicit bias that were relevant to this case, that they did, in fact, have implicit biases that could be addressed through voir dire, that they did have implicit biases that could be addressed through voir dire, and a jury instruction, and that they did not have implicit biases that could not be addressed by the jury instruction and the voir dire conducted by the district court. Based on all of these factors, the lack of evidence or information presented to the district court, and the fact that there simply is no social science research that was before the district court or is before this court, certainly would urge the court to continue to consider, as the Western District of Washington has done, implicit bias instructions. I believe that would be appropriate, but it would not be appropriate for this court to use this appeal, an imperfect vehicle, to legislate that an implicit bias instruction is required in all cases based on these factual circumstances. Unless the court has any further questions, I'll submit. Thank you. Thank you. Just briefly, regarding the voir dire, yes, the judge did ask, you know, if people have any racial biases. Of course, nobody said, nobody raised their hand, and I think the United States Supreme Court, also subsequent to the trial, said in, is it Pena-Rodriguez, Colorado versus Pena-Rodriguez, that asking those kinds of questions during voir dire can really backfire and make things a lot worse, and nobody wants to be outed, you know, that's the whole thing. So an instruction, asking somebody to look inward and in himself as he's deliberating, I think, is the appropriate way to handle that. Will that really solve the problem, that type of instruction? Well, it's about let's find out. Okay. Let's find out. That's a darn good question. All right. Interesting argument that you raised. Yes. Thank you, counsel. And I just have one last thing about the sentence. Yes, we asked for a 10-year mandatory minimum. Mr. Sawyer, there's no doubt that he has, you know, been convicted of selling drugs over and over again, but minute amounts of drugs. He's not a major trafficker. He is a drug addict, and that's why the 10-year sentence was more appropriate. Thank you. Thank you. The matter is submitted.
judges: Schroeder, Nguyen, Simon